Moshe Zeines
410 Union Avenue #302
Irvington, NJ 07111
Moishyzyahoo@gmail.com
Pro Se Plaintiff



CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2025 JUL 15  P 2: 52

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NEWARK VICINAGE

| MOSHE ZEINES<br>  Plaintiff<br><br>v.<br><br>RABBI YAAKOV BLEJER,<br>RABBI ARYEH LEIB BENSINGER, RABBI<br>MARK ROSENBERG, and DAVID KATZ<br>a/k/a DOV KATZ a/k/a DOVIE KATZ<br>  Defendants | DOCKET NO. _____<br><br>CIVIL ACTION<br><br><br>**COMPLAINT AND JURY DEMAND** |
| --- | --- |

**NATURE OF THE ACTION**

1. This action arises out of a deliberate and malicious campaign by Defendants to interfere with Plaintiff's pretrial release conditions in a pending criminal matter in Ocean County, New Jersey by filing knowingly false police reports in Florida, with the intent and result of influencing the Ocean County New Jersey Prosecutor's Office.

2. Defendants' actions, which included false accusations, defamatory community statements, the synagogue ban, interference with Plaintiff's landlord to threaten eviction, and abuse of law enforcement channels, were designed to inflict reputational, legal, and emotional harm upon Plaintiff and directly resulted in unnecessary court proceedings, damage to Plaintiff's legal standing in New Jersey, and his forced relocation from North Miami Beach, Florida, in or about March 2022.

3. Defendants coordinated with one another and others in a series of repeated, targeted actions that form a pattern of harassment and retaliatory misuse of legal and quasi-legal mechanisms.

1

These actions included police reports, the synagogue ban as a form of religious and social community pressure, interference with Plaintiff's landlord, and dissemination of damaging information via the internet and local social media, such as Bensinger's defamatory WhatsApp letter to hundreds of community members.

---

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because because the parties are citizens of different states (Plaintiff is a citizen of New Jersey, Defendants are citizens of Florida), and the amount in controversy exceeds $75,000.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims - namely, interference with Plaintiff's criminal case and court appearance - occurred in New Jersey.

6. This Court also has personal jurisdiction over Defendants because they knowingly directed false and malicious communications into New Jersey with the purpose and effect of interfering with judicial proceedings here and harming a New Jersey resident.

---

## PARTIES

7. Plaintiff Moshe Zeines is an individual residing in New Jersey.

8. Defendant Rabbi Yaakov Blejer is an individual residing in North Miami Beach, Florida, and is the Rosh Kollel of North Miami Beach Kollel.

9. Defendant Rabbi Aryeh Leib Bensinger is an individual residing in North Miami Beach, Florida, and is the Rabbi of Congregation Torah Ve Emunah.

10. Defendant Rabbi Mark Rosenberg is an individual residing in Florida. He is affiliated with the Miami-Dade Police Department as a chaplain and is listed in official police reports as a law enforcement officer.

11. Defendant David Katz a/k/a Dov Katz a/k/a Dovie Katz is an individual residing in Florida.

---

## FACTUAL BACKGROUND

12. In November 2021, Plaintiff was arrested in Ocean County, New Jersey and released on pretrial monitoring with certain conditions, including restrictions on unsupervised contact with minors and internet usage.

13. In December 2021, Plaintiff relocated to South Florida to reside near family while preparing his defense.

14. In or around January or February 2022, Defendant Bensinger initiated a phone call to Plaintiff to "discuss rumors about him," which Plaintiff promptly ended by hanging up. Later that same day, a police officer visited Plaintiff's residence in North Miami Beach, Florida, and informed him that he "was not welcome in any local synagogue and would be arrested if [he] entered any synagogue in town." This ban was directly linked to Bensinger's subsequent statement in a police report (Miami-Dade Police Report No. PD22032070358,) that he and five other rabbis had determined Plaintiff's presence in the community was 'alarming and concerning,' a fabricated concern used to justify the police-enforced exclusion. This action marked the beginning of a coordinated campaign to isolate Plaintiff from his religious community, where synagogue attendance is integral to Jewish Orthodox communal life, with the intent to sever his social ties and force his departure.

15. On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor. That report stemmed from a brief, public, and fully appropriate interaction at a religious event hosted at the home of David Wechsler.

3

16. On February 10, 2022, Detective A. Charles investigated the report and issued a supplemental narrative stating: "I did not discover any evidence to suggest that a crime or a violation of Mr. Zeines' pre-trial release conditions occurred." Witnesses also confirmed there was no inappropriate conduct.

17. On or about February 22, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg caused police reports to be filed with the Miami-Dade Police Department (Report No. PD220302070358). In those report, Defendants made knowingly false statements to the officers that Plaintiff had violated the terms of his pretrial monitoring release conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered access, had installed his own internet connection in violation of pretrial monitoring conditions. The report also included Bensinger's claim that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," reinforcing the earlier synagogue ban, and Rosenberg's allegation that Plaintiff was living "near John F. Kennedy Middle School," further amplifying the false narrative.

18. Plaintiff immediately sought to refute the claim by requesting an investigation and inviting officers to inspect his home. The officers refused but documented in Report No. PD220321094102 that Plaintiff insisted the report was false and that he sought a record of the complaint for future litigation.

19. The false internet allegation made its way to the Ocean County Prosecutor's Office, which threatened to raise it at Plaintiff's upcoming motion hearing regarding a possible modification of his pretrial release. To prevent adverse consequences, Plaintiff and his attorney urgently obtained an affidavit from the landlord's father - the alleged source - refuting Defendants Bensinger and Rosenberg's false internet access claim.

20. Had Plaintiff not successfully secured that affidavit, the Prosecutor was positioned to allege a violation of release conditions, which could have led to a revocation of monitoring, jail time, or loss of bargaining power in plea negotiations.

21. Concurrently, Defendant Bensinger authored and widely disseminated a letter to members of the Orthodox Jewish community in South Florida. In the letter, Bensinger warned people to 'stay away' from Plaintiff and stated that there were 'efforts to remove him from the community.' This

4

phrase reveals the true, retaliatory intent behind the false police reports and synagogue ban: not to protect the public or enforce the law, but to expel Plaintiff from his residence and social support network. This admission confirms that Defendants' use of police processes and community pressure was a pretext for harassment and a coordinated strategy of reputational and legal sabotage.

22. The knowingly false reports made by Defendants were not only improper but unlawful. Under both Florida and New Jersey law, knowingly providing false information to law enforcement officials in connection with a criminal investigation is a criminal offense. While no charges were filed against the Defendants, their conduct nonetheless violated established legal prohibitions and constitutes strong evidence of bad faith and malicious intent.

23. This letter circulated widely via email, WhatsApp, and other local community social media networks, reaching hundreds of individuals and further damaging Plaintiff's reputation.

24. Defendant Rosenberg is identified on page 1 of his police reports as law enforcement officer. In reality, he served in a chaplain capacity but nevertheless exploited that affiliation to lend undue credibility to the false report. His involvement materially contributed to the perception of credibility and to the Ocean County, New Jersey Prosecutor's reliance on the report.

25. Defendant Rosenberg acted in coordinated concert with Defendant Bensinger as part of the same campaign referenced in Bensinger's letter describing "efforts to remove [Plaintiff] from the community."

26. Additionally, Defendant David Katz a/k/a Dov Katz a/k/a Dovie Katz directly contacted Plaintiff's landlord in an attempt to have him evicted based on false and retaliatory motivations. Katz was acting at the direction or request of Defendant Bensinger and/or Defendant Blejer as part of the same coordinated effort to force Plaintiff out of the community through extralegal and improper means. The landlord refused, but the incident caused Plaintiff anxiety and further disruption.

27. As a result of Defendants' actions, including the synagogue ban, false police reports, defamatory letter, and landlord harassment, Plaintiff was forced to abandon his community of North Miami Beach, Florida in or about March 2022 to avoid further public humiliation, suffered

severe emotional distress, reputational harm, unnecessary legal expense, interference with the administration of justice, and disruption to his housing and defense.

---

### COUNT ONE: ABUSE OF PROCESS
#### (Against All Defendants)

28. Plaintiff repeats and realleges the foregoing paragraphs.

29. Under New Jersey law, abuse of process is defined as the misuse or perversion of a legal process to accomplish some ulterior purpose for which it was not designed. See Ash v. Cohn, 119 N.J.L. 54, 58 (E. & A. 1937) (defining abuse of process as the use of legal process "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed"). Similarly, under Florida law, abuse of process requires (1) an illegal, improper, or perverted use of process, (2) an ulterior motive, and (3) resulting damage to the plaintiff. See Bothwell v. D & M Realty Co., 368 So. 2d 586, 588 (Fla. 4th DCA 1979).

30. Defendants Bensinger, Blejer, Rosenberg, and Katz individually and in concert, engaged in abuse of process by filing and causing to be filed multiple knowingly false police reports with the Miami-Dade Police Department, and manipulating law enforcement to enforce a baseless synagogue ban, including but not limited to:

- In January or February 2022, Defendant Bensinger orchestrated a police visit to Plaintiff's residence, resulting in an officer banning Plaintiff from all local synagogues based on Bensinger's fabricated claim, later documented in a police report, that he and five other rabbis deemed Plaintiff's presence "alarming and concerning."
- On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor at a community event. The Miami-Dade Police Department found the report to be baseless.
- On or about February 19, 2022 Defendants Rosenberg and Bensinger filed a false police report (No. PD220302070358) with Detective Shad Mezghat, in which he stated that Plaintiff's brother was making harassing spoof calls "in retaliation for a previous

Miami-Dade Police Report (PD220203037970) concerning his brother." Rosenberg and
Bensinger's specific reference to Blejer's February 2, 2022, report, which they did not
file, demonstrates that Defendants communicated and coordinated their actions, sharing
knowledge of the false reporting campaign to harass Plaintiff and his family.

- On or about February 28, 2022, Defendants Bensinger and Rosenberg filed another false
  police report (under the same Report No. PD220302070358). In that report, Defendants
  reiterated the fabricated community concern by knowingly making a false statements to
  the officers that Plaintiff had violated the terms of his pretrial monitoring release
  conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered
  access, had installed his own internet connection in violation of pretrial monitoring
  conditions. This report, following Blejer's and Bensinger's earlier reports, further
  evidences a pattern of coordinated false filings.

- The February 19, 2022 and February 28, 2022 report identified Rosenberg as a law
  enforcement officer despite his actual role as a Miami-Dade Police Department chaplain.
  Rosenberg misrepresented his authority in this report to further amplify the false narrative
  of Plaintiff as a danger to the community simply because he lived near John F. Kennedy
  Middle School. This misrepresentation of Rosenberg's authority suggests his complicity
  in supporting Defendants' coordinated effort to portray Plaintiff as a danger.

- Shortly after these false reports, Defendant Bensinger authored and disseminated a
  defamatory letter on or about March 2022 via WhatsApp to hundreds of community
  members, falsely claiming Plaintiff engaged in "inappropriate activity" and explicitly
  advocating for his removal from the community. The letter's timing, following the false
  reports, suggests it was part of a planned escalation to amplify harm.

- Defendant Blejer made oral defamatory statements to community members on or about
  February or March 2022 falsely accusing Plaintiff of violating legal conditions, building
  upon Bensinger's letter and reports, further inciting community action against Plaintiff.

- Defendant Katz contacted Plaintiff's landlord on or about March 2022, falsely claiming
  Plaintiff was a danger and urging termination of his tenancy. This occurred in close
  temporal proximity to Bensinger's and Blejer's actions, indicating a shared effort to
  destabilize Plaintiff's housing and legal position.


31. The legal process of filing police reports and engaging law enforcement is intended to report
legitimate criminal activity or public safety concerns. Defendants Bensinger, Blejer, and
Rosenberg, however, perverted this process by filing false reports and leveraging police authority
to enforce the synagogue ban with the ulterior motive of harassing Plaintiff, damaging his
reputation, and causing his wrongful exclusion from his religious community, arrest, or
revocation of his pretrial release in connection with his New Jersey criminal case. Specifically:
Defendant Bensinger's initiation of the synagogue ban, followed by false police reports, was
intended to trigger Plaintiff's isolation and expulsion from the community, while Blejer and

Rosenberg's reports were designed to trigger Plaintiff's arrest or prosecution by falsely claiming violations of pretrial conditions, despite Plaintiff's compliance with all conditions.

32. Defendant Rosenberg, by offering false statements to police and leveraging his chaplain affiliation to bolster the credibility of the reports, including the synagogue ban narrative, materially contributed to the misuse of process and harm to Plaintiff.

33. Defendant Bensinger further encouraged or contributed to these abuses by spreading defamatory statements, including his letter advocating "efforts to remove [Plaintiff] from the community," which incited community action and reinforced the synagogue ban and false reports. The retaliatory nature of these efforts is confirmed by Bensinger's own admission of intent to expel Plaintiff.

34. Defendant Katz, aware of the false nature of these reports and the synagogue ban, furthered the campaign by contacting Plaintiff's landlord to disrupt his tenancy, amplifying the harm caused by the misuse of legal and community processes.

Defendants' actions were not intended to serve the legitimate purpose of reporting a crime or ensuring public safety but rather to harass Plaintiff, ostracize him from the Jewish Orthodox community through the synagogue ban, and interfere with his legal defense in the New Jersey proceedings. This constitutes an improper use of legal process under both New Jersey and Florida law.

35. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered significant harm, including but not limited to:
- Emotional distress from the fear of wrongful arrest or revocation of pretrial release and the loss of religious community access due to the synagogue ban.
- Reputational damage within the community due to false accusations and the public synagogue exclusion.
- Financial losses from legal expenses incurred to defend against the false reports and related proceedings, including costs to obtain police reports, contest the allegations, and address the synagogue ban.
- Interference with Plaintiff's ability to prepare for and defend his New Jersey criminal case, as the false reports and synagogue ban were intended to prejudice the Ocean County Prosecutor's Office against him and isolate him from support.

8

36. Defendants acted with malice, knowing their reports and the synagogue ban were based on false or fabricated claims, or with reckless disregard for their truth, as evidenced by the lack of any substantiating evidence for their claims, the baseless community concern cited by Bensinger, and Bensinger's admitted intent to "remove [Plaintiff] from the community."

37. Defendants intentionally manipulated law enforcement processes - by filing knowingly false reports and orchestrating the synagogue ban through fabricated community concern—for an improper purpose: to interfere with Plaintiff's lawful pretrial release, damage his legal position in New Jersey, and force his expulsion from the community.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants jointly and severally, for:

    (a) Compensatory damages for emotional distress, reputational harm, and financial losses in an amount to be determined at trial;

    (b) Punitive damages to deter Defendants' malicious and egregious conduct;

    (c) Costs of suit, including reasonable attorneys' and expert fees; and

    (d) Such other relief as the Court deems just and proper.

---

### COUNT TWO: DEFAMATION (Against Bensinger and, to the extent applicable, Blejer)

38. Plaintiff repeats and realleges the foregoing paragraphs.

39. Defendant Bensinger authored and disseminated false statements implying Plaintiff posed a danger to the community and that law enforcement was actively attempting to remove him. These defamatory acts include:

- In January or February 2022, Bensinger's initiation of a phone call to Plaintiff regarding rumors, followed by a police officer's visit banning Plaintiff from all local synagogues based on Bensinger's fabricated claim, later documented in a police report (Miami-Dade Police Report No. PD22032070358), that he and five other rabbis deemed Plaintiff's presence "alarming and concerning." This public exclusion was widely perceived as an official accusation of criminal behavior.
- A letter disseminated via WhatsApp to hundreds of community members, falsely claiming Plaintiff violated his pretrial release conditions and engaged in "inappropriate activity," advocating "efforts to remove him from the community." These statements

were made with actual malice, given Bensinger's knowledge of their falsity, as confirmed by the baseless police investigations, and caused significant reputational harm.

40. These statements were made with actual malice or reckless disregard for the truth.

41. The statements were defamatory per se in that they imputed criminal behavior, moral turpitude, and a threat to public safety, particularly through the synagogue ban and letter's portrayal of Plaintiff as a danger requiring exclusion.

42. Additionally, Defendant Blejer orally communicated similar false and defamatory statements regarding Plaintiff to members of his Kollel and the broader Orthodox Jewish community, including allegations that Plaintiff had violated conditions of his release and posed a threat to others, building on the synagogue ban and Bensinger's letter to amplify the false narrative.

43. To the extent Defendant Blejer made or republished these allegations outside of privileged law enforcement communications, such statements were false, defamatory, and made with actual malice or reckless disregard for the truth as they relied on the same baseless claims propagated by Bensinger.

44. Plaintiff suffered reputational harm, emotional anguish, and loss of standing within his religious community, exacerbated by the synagogue ban's public exclusion and the widespread dissemination of Defendants' false statements, which forced Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to escape the ongoing defamation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger and Blejer, jointly and severally, for:
- (a) Compensatory damages for reputational harm, emotional distress, and financial losses caused by Defendants' defamatory statements, including relocation costs, in an amount to be determined at trial;
- (b) Punitive damages to deter Defendants' malicious and reckless conduct in making knowingly false statements;
- (c) Costs of suit, including reasonable attorneys' and expert fees; and
- (d) Such other relief as the Court deems just and proper.

---

## COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
### (Against All Defendants)

45. Plaintiff repeats and realleges the foregoing paragraphs.


46. Defendants' conduct was intentional, extreme, and outrageous including but not limited to:
- Defendant Bensinger's initiation of a phone call to Plaintiff in January or February 2022 to discuss rumors, followed by orchestrating a police visit that banned Plaintiff from all local synagogues based on a fabricated claim, later documented in a police report (Miami-Dade Police Report No. PD22032070358), that he and five other rabbis deemed Plaintiff's presence "alarming and concerning."
- Filing multiple knowingly false police reports, including Defendant Blejer's report on February 3, 2022 (Report No. PD220203037970), and Defendants Rosenberg and Bensinger's reports (No. PD22032070358) on February 19, 2022 and February 28, 2022 alleging violations of pretrial release conditions despite knowledge of their falsity.
- Defendant Bensinger's dissemination of a defamatory letter via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to remove him from the community."
- Defendant Blejer's oral defamatory statements to community members, amplifying the false narrative.
- Defendant Katz's contact with Plaintiff's landlord, falsely claiming Plaintiff was a danger to urge eviction.


47. Defendants sought to inflict emotional and legal harm on Plaintiff through these repeated acts of false reporting, harassment, and character assassination, with the specific intent to ostracize him from his religious community, damage his reputation, and disrupt his criminal defense in the New Jersey proceedings, as evidenced by Bensinger's admitted goal to "remove [Plaintiff] from the community."


48. Plaintiff suffered severe emotional distress as a result, including fear of re-arrest or revocation of pretrial release, loss of housing, social ostracization intensified by the synagogue ban, and disruption of his criminal defense, which forced Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to escape the ongoing campaign.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Blejer, Rosenberg and Katz, jointly and severally, for:

    (a) Compensatory damages for severe emotional distress, mental anguish, and related financial losses, including relocation costs, caused by Defendants' extreme and outrageous conduct, in an amount to be determined at trial;

    (b) Punitive damages to deter Defendants' malicious and egregious actions intended to cause Plaintiff severe emotional harm;

    (c) Costs of suit, including reasonable attorneys' and expert fees; and

    (d) Such other relief as the Court deems just and proper.

---

## COUNT FOUR: TORTIOUS INTERFERENCE WITH JUDICIAL PROCEEDINGS
### (Against Blejer, Bensinger, and Rosenberg)

49. Plaintiff repeats and realleges the foregoing paragraphs.

50. Defendants knew of Plaintiff's pending criminal matter in Ocean County, New Jersey, as evidenced by their references to Plaintiff's pretrial release conditions in their actions and communications.

51. Their false reports, orchestrated synagogue ban, and defamatory communications were designed to and did interfere with the pretrial proceedings, nearly resulting in a revocation of release or modification of monitoring conditions. Specifically:

- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's access to community support critical for his defense preparation.

- On February 3, 2022, Defendant Blejer filed a false police report (Report No. PD220203037970) alleging Plaintiff violated pretrial conditions, which the Miami-Dade Police found baseless but which was transmitted to the Ocean County Prosecutor's Office.

- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial internet conditions. This report was intended to prejudice the Prosecutor against Plaintiff.

- Defendant Bensinger's defamatory letter, disseminated via WhatsApp to hundreds of community members, falsely claimed Plaintiff's "inappropriate activity" and "efforts to remove him from the community," further undermining Plaintiff's legal standing.

52. Their actions caused Plaintiff actual harm in the form of legal costs to refute the false reports and obtain an affidavit from the landlord's father, strategic disadvantage due to the disrupted defense preparation and community isolation, and reputational damage in the eyes of prosecutors and the court, ultimately forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to mitigate the interference.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Blejer, and Rosenberg, jointly and severally, for:

(a) Compensatory damages for legal costs, strategic disadvantage, reputational harm, and relocation expenses caused by Defendants' interference, in an amount to be determined at trial;
(b) Punitive damages to deter Defendants' malicious and intentional actions intended to sabotage Plaintiff's judicial proceedings;
(c) Costs of suit, including reasonable attorneys' and expert fees; and
(d) Such other relief as the Court deems just and proper.

## COUNT FIVE: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Under New Jersey law, tortious interference with prospective economic advantage requires: (1) a reasonable expectation of economic advantage or benefit, (2) intentional and wrongful interference with that expectation, (3) a reasonable probability that the plaintiff would have received the anticipated benefit but for the interference, and (4) resulting damages. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989). Similarly, under Florida law, the tort requires: (1) the existence of a business relationship or advantageous

position, (2) intentional and unjustified interference, (3) causation, and (4) damages. See
Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

55. Plaintiff had a reasonable expectation of economic advantage, including but not limited to:
- The continued stability of his tenancy at his residence in North Miami Beach, Florida,
  which provided a secure base to prepare for and defend his New Jersey criminal case.
- The ability to maintain his reputation and community standing, which were essential to
  securing future employment or business opportunities following the resolution of his
  New Jersey case.
- The unimpeded ability to defend himself in the New Jersey criminal proceedings,
  including access to legal resources and freedom from undue prejudice caused by false
  accusations and community ostracization.

56. Defendants Bensinger, Blejer, Rosenberg, and Katz, individually and in concert, intentionally
and wrongfully interfered with Plaintiff's prospective economic advantage through the following
actions:
- In January or February 2022, Defendant Bensinger orchestrated a police visit banning
  Plaintiff from all local synagogues, based on a fabricated claim later documented in a
  police report (Miami-Dade Police Report No. PD22032070358) that he and five other
  rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's
  community standing and housing stability critical to his legal defense.
- On February 3, 2022, Defendant Blejer filed a false police report (Report No.
  PD220203037970) alleging Plaintiff violated pretrial conditions, which threatened his
  tenancy and reputation despite being found baseless by the Miami-Dade Police.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed
  a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial
  internet conditions. These reports were intended to trigger Plaintiff's arrest or revocation
  of pretrial release, which would have disrupted his ability to prepare his legal defense and
  maintain his tenancy.
- Defendant Bensinger authored and disseminated a defamatory letter on or about March
  2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff
  engaged in "inappropriate activity" and advocating "efforts to remove him from the
  community," prejudicing Plaintiff's reputation and tenancy.
- Defendant Blejer made oral defamatory statements to community members on or about
  February 2022 and March 2022 falsely accusing Plaintiff of violating legal conditions,
  further inciting efforts to ostracize Plaintiff and threaten his housing and economic
  prospects.

14

- Defendant Katz contacted Plaintiff's landlord on or about March 2022, falsely claiming Plaintiff was a danger to the community and urging the landlord to terminate Plaintiff's tenancy. This action directly threatened Plaintiff's housing stability, which was critical to his ability to focus on his New Jersey legal defense.

57. Defendants' actions were wrongful and unjustified, as they were based on knowingly false statements and reports, made with malice or reckless disregard for their truth. Defendant Bensinger's letter explicitly admitted an intent to "remove [Plaintiff] from the community," demonstrating a coordinated campaign to harm Plaintiff's economic and legal interests. But for Defendants' interference, Plaintiff had a reasonable probability of maintaining his tenancy, preserving his community standing, and effectively defending his New Jersey criminal case without the added burden of false accusations, the synagogue ban, and legal challenges. The false police reports, synagogue ban, and defamatory statements created a substantial risk of pretrial release revocation, increased legal expenses, and prejudiced the Ocean County Prosecutor's Office against Plaintiff.

58. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered damages, including but not limited to:

- Financial losses from increased legal expenses to contest the false police reports, address the synagogue ban, and protect his tenancy, including costs to obtain police records and consult legal counsel.
- Emotional distress from the threat of eviction, social ostracization due to the synagogue ban, and fear of adverse legal consequences in his New Jersey case.
- Harm to Plaintiff's reputation, reducing his prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense, as the false reports, synagogue ban, and community campaign diverted resources and caused undue stress, forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022.

59. Defendants acted with malice, as evidenced by their knowledge of the falsity of their statements and reports, their coordinated efforts to harm Plaintiff through the synagogue ban and defamatory campaign, and Bensinger's explicit intent to remove Plaintiff from the community. This malicious conduct warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Blejer, Rosenberg and Katz, jointly and severally, for:

(a) Compensatory damages for financial losses, emotional distress, reputational harm, and relocation expenses caused by Defendants' interference, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and intentional interference with Plaintiff's prospective economic advantage;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

---

## COUNT SIX: CIVIL CONSPIRACY
### (Against All Defendants)

60. Plaintiff repeats and realleges the foregoing paragraphs.

61. Under New Jersey law, civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177, 876 A.2d 253 (2005). Similarly, under Florida law, civil conspiracy requires: (1) an agreement between two or more parties, (2) to commit an unlawful act or a lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damages. Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). An agreement may be inferred from circumstantial evidence, such as the pattern, timing, and shared knowledge of the defendants' actions. See Banco Popular, 184 N.J. at 178; Charles, 988 So. 2d at 1160.

62. Defendants Bensinger, Blejer, Rosenberg, and Katz knowingly and intentionally conspired to harm Plaintiff by orchestrating a coordinated campaign to ostracize him from the community, damage his reputation, and disrupt his ability to defend himself in his New Jersey criminal case.

63. The existence of their agreement is inferred from the following circumstantial evidence:

- In January or February 2022, Defendant Bensinger initiated contact by calling Plaintiff on the phone to discuss rumors about him, shortly after which Plaintiff hung up. Later that same day, a police officer visited Plaintiff's residence and informed him he was not welcome in any local synagogue and would be arrested if he entered any synagogue in

town - an action directly linked to Bensinger's statement in a subsequent police report that he and five other rabbis decided Plaintiff's presence in the community was "alarming and concerning," a fabricated concern used to justify the ban.

- On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor at a community event. The Miami-Dade Police Department found the report to be baseless.

- On or about February 19, 2022, Defendants Rosenberg and Bensinger filed a police report (No. PD220302070358) with Detective Shad Mezghat, in which he stated that Plaintiff's brother was making harassing spoof calls "in retaliation for a previous Miami-Dade Police Report (PD220203037970) concerning his brother." Rosenberg and Bensinger's specific reference to Blejer's February 2, 2022, report, which they did not file, demonstrates that Defendants communicated and coordinated their actions, sharing knowledge of the false reporting campaign to harass Plaintiff and his family.

- On or about February 28, 2022, Defendants Bensinger and Rosenberg filed another false police report (under the same Report No. PD220302070358). In that report, Defendants made knowingly false statements to the officers that Plaintiff had violated the terms of his pretrial monitoring release conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered access, had installed his own internet connection in violation of pretrial monitoring conditions. This report, following Blejer's and Bensinger's earlier reports, further evidences a pattern of coordinated false filings.

- The February 19, 2022 and February 28, 2022 report identified Rosenberg as a law enforcement officer despite his actual role as a Miami-Dade Police Department chaplain. Rosenberg misrepresented his authority in this report to further amplify the false narrative of Plaintiff as a danger to the community simply because he lived near John F. Kennedy Middle School. This misrepresentation of Rosenberg's authority suggests his complicity in supporting Defendants' coordinated effort to portray Plaintiff as a danger.

- Shortly after these false reports, Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and explicitly advocating for his removal from the community. The letter's timing, following the false reports, suggests it was part of a planned escalation to amplify harm.

- Defendant Blejer made oral defamatory statements to community members on or about February or March 2022 falsely accusing Plaintiff of violating legal conditions, building upon Bensinger's letter and reports, further inciting community action against Plaintiff.

- Defendant Katz contacted Plaintiff's landlord on or about March 2022, falsely claiming Plaintiff was a danger and urging termination of his tenancy. This occurred in close temporal proximity to Bensinger's and Blejer's actions, indicating a shared effort to destabilize Plaintiff's housing and legal position.

64. The rapid succession, complementary nature, and shared knowledge of these acts - Bensinger's initial phone call and police-enforced synagogue ban based on his fabricated community concern, false police reports referencing each other, Rosenberg's authoritative misrepresentation, defamatory letter, defamatory statements, and landlord interference - demonstrate a coordinated campaign consistent with an implicit agreement among Defendants to harm Plaintiff.

65. The purpose of Defendants' conspiracy was to commit unlawful acts, including but not limited to:

- Abuse of Process: Filing false police reports, such as Blejer's February 3, 2022, report, and Rosenberg and Bensinger's February 19, 2022 and February 28, 2022 reports, and orchestrating the police-enforced synagogue ban based on fabricated community concern, to harass Plaintiff and trigger his arrest or revocation of pretrial release, and social consequences (Count One).
- Defamation: Spreading false statements through Bensinger's letter and Blejer's oral statements, accusing Plaintiff of misconduct or legal violations to damage his reputation (Count Two).
- Tortious Interference with Prospective Economic Advantage: Disrupting Plaintiff's tenancy, community standing, religious participation, and legal defense through false reports, defamatory statements, landlord harassment, and the synagogue ban (Count Five).
- Invasion of Privacy (False Light): Publicly portraying Plaintiff as a danger or lawbreaker through the letter, statements, Rosenberg's amplified allegations, and the synagogue ban based on Bensinger's false claim, causing humiliation and forcing his relocation (Count Eight).

66. Defendants committed overt acts in furtherance of the conspiracy, including:

- Defendant Bensinger's phone call to Plaintiff in January or February 2022 and the subsequent police visit banning Plaintiff from local synagogues based on his fabricated claim of community concern.
- Defendant Blejer's filing of a false police report on February 3, 2022.
- Defendants Rosenberg and Bensinger's filing of the false police reports on February 19, 2022 and February 28, 2022
- Defendant Bensinger's dissemination of the defamatory letter.
- Defendant Blejer's oral defamatory statements to community members, reinforcing the false narrative initiated by Bensinger.

- Defendant Katz's contact with Plaintiff's landlord, urging termination of Plaintiff's tenancy, which amplified the conspiracy's harm.

67. Defendants coordinated and encouraged each other in their campaign of false reports, community defamation, and legal harassment.

68. Defendants' actions were undertaken with malice, as they knew their statements and reports were false or acted with reckless disregard for their truth. The baseless nature of the February 3, 2022, and February 19, 2022 and February 28, 2022 police reports, Bensinger's reference to Blejer's report in the February 19, 2022, report, Rosenberg's unverified internet claims despite his non-law enforcement role, the ungrounded synagogue ban following Bensinger's fabricated community concern, combined with Bensinger's letter's explicit intent to "remove [Plaintiff] from the community" confirm their malicious intent to harm Plaintiff.

69. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff suffered damages, including but not limited to:
- Financial losses from increased legal expenses to contest the false police reports and protect his tenancy, including costs to obtain police records and consult legal counsel.
- Severe emotional distress from the coordinated campaign of harassment, public shaming, loss of religious community access due to the synagogue ban, and fear of wrongful legal consequences, which forced Plaintiff to leave North Miami Beach, Florida, on or about March 2022, incurring relocation costs such as moving expenses and new housing costs.
- Reputational damage, reducing Plaintiff's prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense in the New Jersey criminal case, as the false reports and synagogue ban were intended to prejudice the Ocean County Prosecutor's Office and isolate Plaintiff from support.

70. The malicious and coordinated nature of Defendants' actions warrants punitive damages to deter such egregious conduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Blejer, Rosenberg, and Katz, jointly and severally, for:

(a) Compensatory damages for financial losses, relocation costs, emotional distress, and reputational harm caused by Defendants' civil conspiracy, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and unlawful coordinated actions;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

---

## COUNT SEVEN: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

71. Plaintiff repeats and realleges the foregoing paragraphs.

72. Under New Jersey law, tortious interference with prospective economic advantage requires: (1) a reasonable expectation of economic advantage or benefit, (2) intentional and wrongful interference with that expectation, (3) a reasonable probability that the plaintiff would have received the anticipated benefit but for the interference, and (4) resulting damages. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989). Similarly, under Florida law, the tort requires: (1) the existence of a business relationship or advantageous position, (2) intentional and unjustified interference, (3) causation, and (4) damages. Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

73. At all relevant times, Plaintiff maintained an ongoing residential lease and tenancy in North Miami Beach, Florida and had a reasonable expectation of continued occupancy.

74. Plaintiff had a reasonable expectation of economic advantage, including but not limited to:

- The continued stability of his tenancy at his residence in North Miami Beach, Florida, which provided a secure base to prepare for and defend his New Jersey criminal case and maintain his financial stability.
- The preservation of his reputation and community standing, which were essential to securing future employment or business opportunities following the resolution of his New Jersey case.

20

- The unimpeded ability to defend himself in the New Jersey criminal proceedings, including access to legal resources and freedom from undue prejudice caused by false accusations and community ostracization.

75. Defendants Rosenberg, Bensinger, Blejer, and Katz, individually and in concert, intentionally and wrongfully interfered with Plaintiff's prospective economic advantage through the following actions:

- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's community standing and housing stability critical to his legal defense and economic prospects.
- On February 2, 2022, Defendant Blejer filed a false police report (Report No. PD220203037970) alleging Plaintiff violated pretrial conditions, which threatened his tenancy and reputation despite being found baseless by the Miami-Dade Police.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial internet conditions. These false police reports were intended to jeopardize Plaintiff's release, tenancy, and economic stability, trigger Plaintiff's arrest or revocation of pretrial release, and disrupt his ability to prepare his legal defense.
- Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to remove him from the community." The letter's timing, following the false police reports, was designed to amplify reputational harm and jeopardize Plaintiff's tenancy and future economic prospects.
- Defendant Blejer made oral defamatory statements to community members in or about February 2022 and March 2022 falsely accusing Plaintiff of violating legal conditions, which reinforced Bensinger's letter and further damaged Plaintiff's reputation and community standing.
- Defendant Katz contacted Plaintiff's landlord in or about March 2022, falsely claiming Plaintiff was a danger and demanded eviction. Katz acted at the direction or encouragement of Defendants Bensinger, Rosenberg, and/or Blejer. This action directly threatened Plaintiff's housing stability, which was critical to his financial and legal position.

76. Defendants knew of Plaintiff's housing status and, as part of a coordinated effort to drive him out of the community, including through the synagogue ban, intentionally attempted to interfere with that tenancy and his broader economic prospects.

77. Defendants had no legitimate reason to interfere with Plaintiff's housing and acted solely out of malice, with the goal of forcing Plaintiff to relocate and further isolating him from familial and legal support, as evidenced by Bensinger's synagogue ban and "remove [Plaintiff]" intent.

78. Although the landlord declined to act on the eviction request, the communication, combined with the synagogue ban and defamatory campaign, caused Plaintiff to fear for his housing stability and endure further emotional and psychological distress, ultimately leading to his relocation.

79. Defendants' interference was wrongful and unjustified, as their actions were based on knowingly false statements and reports, constituting torts such as abuse of process and defamation. The false police reports, synagogue ban, and defamatory statements were made with malice, as Defendants knew they were false or acted with reckless disregard for their truth, as evidenced by the baseless nature of the reports, the fabricated community concern, and Bensinger's explicit intent to "remove [Plaintiff] from the community."

80. But for Defendants' interference, Plaintiff had a reasonable probability of maintaining his tenancy, preserving his reputation for future employment or business opportunities, and effectively defending his New Jersey criminal case without the burden of false accusations, the synagogue ban, and legal challenges. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered damages, including but not limited to:

- Financial losses from increased legal expenses to contest the false police reports, address the synagogue ban, and protect his tenancy, including costs to obtain police records and consult legal counsel.
- Emotional distress from the threat of eviction, social ostracization due to the synagogue ban, and fear of adverse legal consequences in his New Jersey case.
- Reputational damage, reducing Plaintiff's prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense, as the false reports, synagogue ban, and community campaign diverted resources and caused undue prejudice with the Ocean County Prosecutor's Office, forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022.

81. Defendants' malicious conduct, undertaken with knowledge of the falsity of their actions, warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants jointly and severally, for:

    (a) Compensatory damages for financial losses, emotional distress, reputational harm, and relocation expenses caused by Defendants' tortious interference with Plaintiff's prospective economic advantage, in an amount to be determined at trial;

    (b) Punitive damages to deter Defendants' malicious and intentional interference;

    (c) Costs of suit, including reasonable attorneys' and expert fees; and

    (d) Such other relief as the Court deems just and proper.

## COUNT EIGHT: INVASION OF PRIVACY (FALSE LIGHT)
### (Against Defendants Bensinger, Rosenberg, and Blejer)

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Under New Jersey law, invasion of privacy by false light requires: (1) placing the plaintiff in a false light before the public, (2) that is highly offensive to a reasonable person, and (3) with knowledge or reckless disregard of the falsity (actual malice). Romaine v. Kallinger, 109 N.J. 282, 294, 537 A.2d 284 (1988). Similarly, under Florida law, the tort requires: (1) publicity that places the plaintiff in a false light, (2) that is highly offensive to a reasonable person, and (3) with actual malice. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1100 (Fla. 2008).

84. Defendants Bensinger, Rosenberg, and Blejer placed Plaintiff in a false light before the public by disseminating false and misleading statements that portrayed Plaintiff as a dangerous individual or violator of legal conditions, which was highly offensive to a reasonable person:

- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues in North Miami Beach, Florida, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," publicly portraying Plaintiff as a threat requiring exclusion.
- On February 3, 2022 (Report No. PD220203037970), Defendant Blejer filed a false police report alleging baseless misconduct at a community event.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial

    release conditions by accessing the internet, despite knowing their statements to the
    police officer were false.

- On or about March 2022, Defendant Bensinger authored and disseminated a defamatory
  letter via WhatsApp to hundreds of community members in North Miami Beach, Florida,
  falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to
  remove him from the community," portraying Plaintiff as a threat despite Defendants'
  knowledge of the falsity.
- On or about February 2022 or March 2022, Defendant Blejer made oral statements to
  community members, falsely accusing Plaintiff of violating his pretrial release conditions
  or engaging in misconduct. These statements, made to multiple individuals in public
  settings, reinforced the false narrative created by Bensinger's letter and further portrayed
  Plaintiff as a lawbreaker.

85. The false light created by Defendants' statements was highly offensive to a reasonable
person, as it suggested Plaintiff was a criminal or danger to the community, leading to public
shaming, ostracization through the synagogue ban, and widespread community condemnation.
Such a portrayal would cause significant personal embarrassment and distress to any reasonable
individual in Plaintiff's position.

86. Defendants acted with actual malice, knowing their statements were false or with reckless
disregard for their truth. Defendant Bensinger's orchestration of the synagogue ban and letter
were disseminated despite his knowledge that Plaintiff had not violated pretrial conditions or
engaged in inappropriate activity, as evidenced by the baseless nature of the February 19, 2022,
February 28, 2022, and February 3, 2022, police reports. Defendant Blejer's statements and
Defendant Rosenberg's contribution to the February 28, 2022 report similarly lacked any factual
basis, reflecting a coordinated effort to malign Plaintiff.

87. The publicity of Defendants' statements was substantial, as Bensinger's letter and the
synagogue ban reached hundreds of community members via WhatsApp and police enforcement
in North Miami Beach, Florida, and Blejer's oral statements were made to multiple individuals in
public settings, ensuring widespread dissemination within Plaintiff's community.

88. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional
distress and personal humiliation, including but not limited to:

- Public shaming and ostracization by community members, who were misled by Defendants' false statements and the synagogue ban to view Plaintiff as a danger or lawbreaker.
- Emotional distress so severe that Plaintiff was forced to leave North Miami Beach, Florida, in or about March 2022 to avoid further public humiliation and harassment, incurring significant relocation costs, including moving expenses and costs to secure new housing.
- Disruption of Plaintiff's personal and social life, as he was compelled to abandon his community ties to escape the false light created by Defendants.

89. Defendants' malicious conduct, undertaken with knowledge of the falsity of their statements, warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Rosenberg and Blejer, jointly and severally, for:

- (a) Compensatory damages for emotional distress, relocation costs, and personal humiliation caused by Defendants' invasion of privacy, in an amount to be determined at trial;
- (b) Punitive damages to deter Defendants' malicious and reckless actions;
- (c) Costs of suit, including reasonable attorneys' and expert fees; and
- (d) Such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants jointly and severally as follows: (a) compensatory damages for emotional distress, reputational harm, and legal expenses in an amount to be determined at trial; (b) punitive damages to deter Defendants' malicious conduct; (c) costs of suit, including reasonable attorneys' and expert fees; and (d) such other relief as the Court deems just and proper."

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
Dated: July 15, 2025
By: /s Moshe Zeines
Moshe Zeines
410 Union Avenue #302
Irvington. NJ 07111
Pro Se Plaintiff