Moshe Zeines
410 Union Avenue #302
Irvington, NJ 07111
Moishyzyahoo@gmail.com
Pro Se Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NEWARK VICINAGE

| | |
|---|---|
| MOSHE ZEINES<br> Plaintiff<br><br>v.<br><br>RABBI YAAKOV BLEJER,<br>RABBI ARYEH LEIB BENSINGER, RABBI MARK ROSENBERG, DAVID KATZ a/k/a DOV KATZ a/k/a DOVIE KATZ, CONGREGATION TORAH VE-EMUNAH, INC., and NORTH MIAMI BEACH KOLLEL, INC.,<br>Defendants | Hon. Julien Xavier Neals, U.S.D.J.<br>Hon. Leda Dunn Wettre, U.S.M.J.<br><br><br>DOCKET NO. 2:25-cv-13335-JXN-LDW<br><br>CIVIL ACTION<br><br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

**NATURE OF THE ACTION**

1. This action arises out of a deliberate and malicious campaign by Defendants to interfere with Plaintiff's pretrial release conditions in a pending criminal matter in Ocean County, New Jersey by filing knowingly false police reports in Florida, with the intent and result of influencing the Ocean County New Jersey Prosecutor's Office.

2. Defendants' actions, which included false accusations, defamatory community statements, the synagogue ban, interference with Plaintiff's landlord to threaten eviction, and abuse of law enforcement channels, with Defendants CONGREGATION TORAH VE-EMUNAH, INC. and NORTH MIAMI BEACH KOLLEL, INC. knowingly or negligently allowing their resources (e.g., letterhead, bulletin boards, membership lists, and platforms) to be used in the campaign, were designed to inflict reputational, legal, and emotional harm upon Plaintiff and directly

resulted in unnecessary court proceedings, damage to Plaintiff's legal standing in New Jersey, and his forced relocation from North Miami Beach, Florida, in or about March 2022.

3. Defendants coordinated with one another and others, including through CONGREGATION TORAH VE-EMUNAH, INC. and NORTH MIAMI BEACH KOLLEL, INC., in a series of repeated, targeted actions that form a pattern of harassment and retaliatory misuse of legal and quasi-legal mechanisms. These actions included police reports, the synagogue ban as a form of religious and social community pressure, interference with Plaintiff's landlord, and dissemination of damaging information via the internet and local social media, such as Bensinger's defamatory WhatsApp letter using Torah Ve-Emunah's resources and Blejer's use of Kollel's platform to spread rumors to hundreds of community members.

---

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because because the parties are citizens of different states (Plaintiff is a citizen of New Jersey, Defendants are citizens of Florida), and the amount in controversy exceeds $75,000.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims - namely, interference with Plaintiff's criminal case and court appearance - occurred in New Jersey.

6. This Court also has personal jurisdiction over Defendants because they knowingly directed false and malicious communications into New Jersey with the purpose and effect of interfering with judicial proceedings here and harming a New Jersey resident.

---

## PARTIES

7. Plaintiff Moshe Zeines is an individual residing in New Jersey.

8. Defendant Rabbi Yaakov Blejer ("Blejer") is an individual residing in North Miami Beach, Florida, and is the Rosh Kollel of North Miami Beach Kollel.

9. Defendant Rabbi Aryeh Leib Bensinger ("Bensinger") is an individual residing in North Miami Beach, Florida, and is the Rabbi of Congregation Torah Ve Emunah.

10. Defendant Rabbi Mark Rosenberg ("Rosenberg") is an individual residing in Florida. He is affiliated with the Miami-Dade Police Department as a chaplain and is listed in official police reports as a law enforcement officer.

11. Defendant David Katz a/k/a Dov Katz a/k/a Dovie Katz ("Katz") is an individual residing in Florida. Upon information and belief, Katz maintains close working relationships with law enforcement and local government officials through his leadership roles as clergy support for the medical examiner and in Tomchei Shabbos and Chesed Shel Emes which regularly require logistical support from police and municipal agencies. Katz's ongoing need for law enforcement cooperation has created a dynamic in which he seeks to maintain favor with influential community leaders, including Defendants Bensinger, Blejer, and Rosenberg who themselves enjoy established ties to law enforcement.

12. Upon information and belief, in furtherance of these relationships and in coordination with Defendants Bensinger and/or Blejer and/or Rosenberg admitted "efforts" to remove Plaintiff from the community, and acting at their direction, Katz undertook to contact Plaintiff's landlord in an attempt to interfere with Plaintiff's housing and cause his eviction. Katz's conduct was not an isolated act but part of the coordinated campaign, directed by Defendants Bensinger, Blejer, and Rosenberg to harass and expel Plaintiff.

13. Defendant Congregation Torah Ve-Emunah, Inc. ("Torah Ve-Emunah") is a religious corporation incorporated and headquartered in North Miami Beach, Florida. At all relevant times, Torah Ve-Emunah acted through its Rabbi, Defendant Bensinger, who used the synagogue's official letterhead, bulletin board, and membership list to disseminate defamatory and harassing communications concerning Plaintiff.

14. Defendant North Miami Beach Kollel, Inc. ("NMB Kollel") is a religious corporation incorporated and headquartered in North Miami Beach, Florida. At all relevant times, NMB Kollel acted through its Rabbi, Defendant Blejer, who used the Kollel's platform, members, and

resources to spread defamatory rumors about Plaintiff and to enlist congregants in filing or supporting false police reports against Plaintiff.

---

## FACTUAL BACKGROUND

15. In November 2021, Plaintiff was arrested in Ocean County, New Jersey and released on pretrial monitoring with certain conditions, including restrictions on unsupervised contact with minors and internet usage.

16. In December 2021, Plaintiff relocated to South Florida to reside near family while preparing his defense.

17. In or around January or February 2022, Defendant Bensinger initiated a phone call to Plaintiff to "discuss rumors about him," which Plaintiff promptly ended by hanging up. Later that same day, a police officer visited Plaintiff's residence in North Miami Beach, Florida, and informed him that he "was not welcome in any local synagogue and would be arrested if [he] entered any synagogue in town." This ban was directly linked to Bensinger's subsequent statement in a police report (Miami-Dade Police Report No. PD22032070358,) that he and five other rabbis had determined Plaintiff's presence in the community was 'alarming and concerning,' a fabricated concern used to justify the police-enforced exclusion. This action marked the beginning of a coordinated campaign to isolate Plaintiff from his religious community, where synagogue attendance is integral to Jewish Orthodox communal life, with the intent to sever his social ties and force his departure.

18. On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor. That report stemmed from a brief, public, and fully appropriate interaction at a religious event hosted at the home of David Wechsler.

19. On February 10, 2022, Detective A. Charles investigated the report and issued a supplemental narrative stating: "I did not discover any evidence to suggest that a crime or a

violation of Mr. Zeines' pre-trial release conditions occurred." Witnesses also confirmed there was no inappropriate conduct.

20. On or about February 22, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg caused police reports to be filed with the Miami-Dade Police Department (Report No. PD220302070358). In those reports, Defendants Bensinger and Rosenberg made knowingly false statements to the officers that Plaintiff had violated the terms of his pretrial monitoring release conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered access, installed his own internet connection in violation of pretrial monitoring conditions. The report also included Bensinger's claim that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," reinforcing the earlier synagogue ban, and Rosenberg's allegation that Plaintiff was living "near John F. Kennedy Middle School," further amplifying the false narrative.

21. Plaintiff immediately sought to refute the claim by requesting an investigation and inviting officers to inspect his home. The officers refused but documented in Report No. PD220321094102 that Plaintiff insisted the report was false and that he sought a record of the complaint for future litigation.

22. The false internet allegation made its way to the Ocean County Prosecutor's Office, which threatened to raise it at Plaintiff's upcoming motion hearing regarding a possible modification of his pretrial release. To prevent adverse consequences, Plaintiff's attorney urgently obtained an affidavit from the landlord's father - the alleged source - refuting Defendants Bensinger and Rosenberg's false internet access claim.

23. Had Plaintiff not successfully secured that affidavit, the Prosecutor was positioned to allege a violation of release conditions, which could have led to a revocation of monitoring, jail time, or loss of bargaining power in plea negotiations.

24. Concurrently, Defendant Bensinger authored and widely disseminated a letter to members of the Orthodox Jewish community in South Florida. In the letter, Bensinger warned people to 'stay away' from Plaintiff and stated that there were 'efforts to remove him from the community.' This phrase reveals the true, retaliatory intent behind the false police reports and synagogue ban: not to protect the public or enforce the law, but to expel Plaintiff from his residence and social support network. This admission confirms that Defendants' use of police processes and

community pressure was a pretext for harassment and a coordinated strategy of reputational and legal sabotage.

25. The knowingly false reports made by Defendants were not only improper but unlawful. Under both Florida and New Jersey law, knowingly providing false information to law enforcement officials in connection with a criminal investigation is a criminal offense. While no charges were filed against the Defendants, their conduct nonetheless violated established legal prohibitions and constitutes strong evidence of bad faith and malicious intent.

26. This letter circulated widely via email, WhatsApp, and other local community social media networks, reaching hundreds of individuals and further damaging Plaintiff's reputation.

27. Defendant Bensinger disseminated his defamatory letter concerning Plaintiff on Congregation Torah Ve-Emunah letterhead, signed as "Rabbi" of the congregation. He posted this letter on the synagogue's bulletin board and distributed it using the synagogue's membership list, thereby acting under the imprimatur and authority of the synagogue.

28. Defendant Blejer, likewise, used his position as Rabbi of the North Miami Beach Kollel to spread false rumors concerning Plaintiff within the Kollel community and to recruit his congregants and associates David Wechsler and Moshe Price to participate in or encourage the filing of false police reports.

29. Defendant CONGREGATION TORAH VE-EMUNAH, INC., through its Rabbi, Defendant Bensinger, knowingly or negligently allowed its letterhead, bulletin board, and membership list to be used to disseminate the defamatory letter in March 2022, with Bensinger hanging copies on the congregation's bulletin board and sending it to members, amplifying the false portrayal of Plaintiff. Defendant NORTH MIAMI BEACH KOLLEL, INC., through its Rabbi, Defendant Blejer, knowingly or negligently permitted its platform and followers to be used to spread oral rumors and encourage the filing of the false February 2, 2022, police report, furthering the harassment campaign.

30. Upon information and belief, Congregation Torah Ve-Emunah, Inc. ratified or acquiesced in Rabbi Bensinger's conduct by permitting him to use synagogue letterhead, official congregational resources, and its bulletin board to disseminate defamatory and harassing

statements about Plaintiff. Plaintiff is informed and believes that synagogue leadership was aware of, endorsed, or failed to stop this misuse of synagogue authority.

31. Upon information and belief, North Miami Beach Kollel, Inc. ratified or acquiesced in Rabbi Blejer's conduct by allowing him to use his role as Rabbi of the Kollel to spread defamatory rumors about Plaintiff and to enlist Kollel members in the filing of false police reports. Plaintiff is informed and believes that the Kollel's leadership or board was aware of these efforts and knowingly permitted or supported them.

32. Upon information and belief, both Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. benefitted from the coordinated campaign against Plaintiff by portraying themselves to their members and the broader Orthodox Jewish community as safeguarding communal safety and morality. By allowing or endorsing the false reports and defamatory publications concerning Plaintiff, these congregations sought to enhance their reputations and credibility within the community, thereby deriving institutional benefit from the unlawful and tortious conduct.

33. Defendant Rosenberg is identified on page 1 of his police reports as a law enforcement officer. In reality, he served in a chaplain capacity but nevertheless exploited that affiliation to lend undue credibility to the false report. His involvement materially contributed to the perception of credibility and to the Ocean County, New Jersey Prosecutor's reliance on the report.

34. Defendant Rosenberg acted in coordinated concert with Defendant Bensinger as part of the same campaign referenced in Bensinger's letter describing "efforts to remove [Plaintiff] from the community."

35. Additionally, Defendant David Katz a/k/a Dov Katz a/k/a Dovie Katz directly contacted Plaintiff's landlord in an attempt to have him evicted based on false and retaliatory motivations. Katz was acting at the direction or request of Defendant Bensinger and/or Defendant Blejer and/or Defendant Rosenberg as part of the same coordinated effort to force Plaintiff out of the community through extralegal and improper means. The landlord refused, but the incident caused Plaintiff anxiety and further disruption.

36. As a result of Defendants' concerted actions, including the synagogue ban, false police reports, defamatory letter, and landlord harassment, Plaintiff was forced to abandon his community of North Miami Beach, Florida in or about March 2022 to avoid further public humiliation, suffered severe emotional distress, reputational harm, unnecessary legal expense, interference with the administration of justice, and disruption to his housing and defense.

## CHOICE OF LAW AND STATUTE OF LIMITATIONS

37. The wrongful acts alleged in this Complaint occurred almost entirely in Florida, including in Miami-Dade County, where Defendants filed false police reports, orchestrated a synagogue ban, contacted Plaintiff's landlord, and disseminated defamatory and stigmatizing statements. Under New Jersey's choice-of-law principles, which apply in this diversity action, the governing law is determined by the "most significant relationship" test. See P.V. v. Camp Jaycee, 197 N.J. 132, 142–44 (2008) (adopting Restatement (Second) of Conflict of Laws § 145). Because the alleged tortious conduct and the resulting harm to Plaintiff's housing, reputation, and emotional well-being all occurred in Florida, Florida law applies to Plaintiff's state-law tort claims, including Florida's four-year statute of limitations for abuse of process, tortious interference, conspiracy, and intentional infliction of emotional distress. See Fla. Stat. § 95.11(3)(o).

38. Moreover, even if New Jersey limitations periods were considered, they should be tolled until the conclusion of Plaintiff's underlying criminal case. Plaintiff was sentenced in Ocean County, New Jersey, on January 17, 2024, and could not safely bring the present civil action before that date without risking further interference in his pending criminal proceedings. Defendants' false reports, defamatory publications, and synagogue ban were expressly designed to prejudice Plaintiff's pretrial release status and to influence the Ocean County Prosecutor's Office. Equity requires that the statute of limitations be tolled until January 17, 2024, when Plaintiff's criminal proceedings concluded and the threat of further manipulation of that process abated. See, e.g., Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001) (equitable tolling appropriate where plaintiff was prevented from asserting rights); Machules v. Dep't of Admin., 523 So. 2d 1132, 1134 (Fla. 1988) (equitable tolling applied where justice requires). Accordingly, all claims in this action are timely.


---

## COUNT ONE: ABUSE OF PROCESS
### (Against All Defendants)

39. Plaintiff repeats and realleges the foregoing paragraphs.

40. Under New Jersey law, abuse of process is defined as the misuse or perversion of a legal process to accomplish some ulterior purpose for which it was not designed. See Ash v. Cohn, 119 N.J.L. 54, 58 (E. & A. 1937) (defining abuse of process as the use of legal process "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed"). Similarly, under Florida law, abuse of process requires (1) an illegal, improper, or perverted use of process, (2) an ulterior motive, and (3) resulting damage to the plaintiff. See Bothwell v. D & M Realty Co., 368 So. 2d 586, 588 (Fla. 4th DCA 1979).

41. Defendants Bensinger, Blejer, Rosenberg, Katz, Congregation Torah Ve-Emunah, Inc., and North Miami Beach Kollel, Inc. intentionally manipulated law enforcement processes and community mechanisms to harm Plaintiff.

42. Defendants, individually and in concert, engaged in abuse of process by filing and causing to be filed multiple knowingly false police reports with the Miami-Dade Police Department, and manipulating law enforcement to enforce a baseless synagogue ban, including but not limited to:

- In January or February 2022, Defendant Bensinger orchestrated a police visit to Plaintiff's residence, resulting in an officer banning Plaintiff from all local synagogues based on Bensinger's fabricated claim, later documented in a police report, that he and five other rabbis deemed Plaintiff's presence "alarming and concerning."
- Congregation Torah Ve-Emunah, Inc. facilitated or ratified the synagogue ban, providing organizational support that amplified the misuse of process.
- On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor at a community event. The Miami-Dade Police Department found the report to be baseless.
- North Miami Beach Kollel, Inc. enabled or endorsed Blejer's communications to the police and the community, further leveraging its institutional authority to perpetuate the false narrative.
- On or about February 19, 2022 Defendants Rosenberg and Bensinger filed a false police report (No. PD220302070358) with Detective Shad Mezghat, in which he stated that Plaintiff's brother was making harassing spoof calls "in retaliation for a previous Miami-Dade Police Report (PD220203037970) concerning his brother." Rosenberg and Bensinger's specific reference to Blejer's February 2, 2022, report, which they did not

9

file, demonstrates that Defendants communicated and coordinated their actions, sharing knowledge of the false reporting campaign to harass Plaintiff and his family.

- On or about February 28, 2022, Defendants Bensinger and Rosenberg filed another false police report (under the same Report No. PD220302070358). In that report, Defendants reiterated the fabricated community concern by knowingly making a false statements to the officers that Plaintiff had violated the terms of his pretrial monitoring release conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered access, had installed his own internet connection in violation of pretrial monitoring conditions. This report, following Blejer's and Bensinger's earlier reports, further evidences a pattern of coordinated false filings.

- The February 19, 2022 and February 28, 2022 report identified Rosenberg as a law enforcement officer despite his actual role as a Miami-Dade Police Department chaplain. Rosenberg misrepresented his authority in this report to further amplify the false narrative of Plaintiff as a danger to the community simply because he lived near John F. Kennedy Middle School. This misrepresentation of Rosenberg's authority suggests his complicity in supporting Defendants' coordinated effort to portray Plaintiff as a danger.

- Shortly after these false reports, Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and explicitly advocating for his removal from the community. The letter's timing, following the false reports, suggests it was part of a planned escalation to amplify harm.

- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.

- Defendant Blejer made oral defamatory statements to community members on or about February or March 2022, at North Miami Beach Kollel in his capacity as Rabbi, falsely accusing Plaintiff of violating legal conditions, building upon Bensinger's letter and reports, further inciting community action against Plaintiff.

- Defendant Katz, aware of the false nature of the reports and synagogue ban, contacted Plaintiff's landlord and other community actors, falsely claiming Plaintiff was a danger and urging termination of his tenancy. Katz's intervention directly exploited the false legal and communal processes to disrupt Plaintiff's housing stability, reputation, and ability to defend his New Jersey criminal case. This occurred in close temporal proximity to Bensinger's, Blejer's and Rosenberg's actions, indicating a shared effort to destabilize Plaintiff's housing and legal position.


43. The legal process of filing police reports and engaging law enforcement is intended to report legitimate criminal activity or public safety concerns. Defendants Bensinger, Blejer, and Rosenberg, and through the resources of CONGREGATION TORAH VE-EMUNAH, INC. and NORTH MIAMI BEACH KOLLEL, INC., which knowingly or negligently allowed their

platforms to be misused, however, perverted this process by filing false reports and leveraging police authority to enforce the synagogue ban with the ulterior motive of harassing Plaintiff, damaging his reputation, and causing his wrongful exclusion from his religious community, arrest, or revocation of his pretrial release in connection with his New Jersey criminal case. Specifically:

Defendant Bensinger's initiation of the synagogue ban, followed by false police reports, was intended to trigger Plaintiff's isolation and expulsion from the community, while Blejer and Rosenberg's reports were designed to trigger Plaintiff's arrest or prosecution by falsely claiming violations of pretrial conditions, despite Plaintiff's compliance with all conditions.

44. Defendant Rosenberg, by offering false statements to police and leveraging his chaplain affiliation to bolster the credibility of the reports, including the synagogue ban narrative, materially contributed to the misuse of process and harm to Plaintiff.

45. Defendant Bensinger further encouraged or contributed to these abuses by spreading defamatory statements, including his letter advocating "efforts to remove [Plaintiff] from the community," which incited community action and reinforced the synagogue ban and false reports. The retaliatory nature of these efforts is confirmed by Bensinger's own admission of intent to expel Plaintiff.

46. Both congregations knowingly or negligently allowed their platforms to be misused, materially contributing to the coordinated abuse of process.

47. Katz's landlord intervention directly exploited the false legal and communal processes to disrupt Plaintiff's housing stability, reputation, and ability to defend his New Jersey criminal case.

48. Defendants' actions were not intended to serve the legitimate purposes of law enforcement or public safety but were instead designed to harass Plaintiff, ostracize him from the Jewish Orthodox community, and interfere with his lawful pretrial release and legal defense.

49. This constitutes an improper use of legal process under both New Jersey and Florida law.

50. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered significant harm, including but not limited to:

- Emotional distress from the fear of wrongful arrest or revocation of pretrial release and the loss of religious community access due to the synagogue ban.
- Reputational damage within the community due to false accusations and the public synagogue exclusion.
- Financial losses from legal expenses incurred to defend against the false reports and related proceedings, including costs to obtain police reports, contest the allegations, and address the synagogue ban.
- Interference with Plaintiff's ability to prepare for and defend his New Jersey criminal case, as the false reports and synagogue ban were intended to prejudice the Ocean County Prosecutor's Office against him and isolate him from support.

51. Defendants acted with malice, knowing their reports and the synagogue ban were based on false or fabricated claims, or with reckless disregard for their truth, as evidenced by the lack of any substantiating evidence for their claims, the baseless community concern cited by Bensinger, and Bensinger's admitted intent to "remove [Plaintiff] from the community."

52. Defendants intentionally manipulated law enforcement processes - by filing knowingly false reports and orchestrating the synagogue ban through fabricated community concern—for an improper purpose: to interfere with Plaintiff's lawful pretrial release, damage his legal position in New Jersey, and force his expulsion from the community.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:

- (a) Compensatory damages for emotional distress, reputational harm, and financial losses in an amount to be determined at trial;
- (b) Punitive damages to deter Defendants' malicious and egregious conduct;
- (c) Costs of suit, including reasonable attorneys' and expert fees; and
- (d) Such other relief as the Court deems just and proper.

---

**COUNT TWO: DEFAMATION (Against Bensinger, Congregation Torah Ve-Emunah, Inc., North Miami Beach Kollel, Inc. and, to the extent applicable, Blejer)**

53. Plaintiff repeats and realleges the foregoing paragraphs.

54. Defendants Bensinger, Congregation Torah Ve-Emunah, Inc., Blejer, and North Miami Beach Kollel, Inc. made and disseminated false and defamatory statements.

55. Defendant Bensinger authored and disseminated false statements implying Plaintiff posed a danger to the community and that law enforcement was actively attempting to remove him. These defamatory acts include:

- In January or February 2022, Bensinger's initiation of a phone call to Plaintiff regarding rumors, followed by a police officer's visit banning Plaintiff from all local synagogues based on Bensinger's fabricated claim, later documented in a police report (Miami-Dade Police Report No. PD22032070358), that he and five other rabbis deemed Plaintiff's presence "alarming and concerning." This public exclusion was widely perceived as an official accusation of criminal behavior.
- A letter disseminated via WhatsApp to hundreds of community members, falsely claiming Plaintiff violated his pretrial release conditions and engaged in "inappropriate activity," advocating "efforts to remove him from the community." These statements were made with actual malice, given Bensinger's knowledge of their falsity, as confirmed by the baseless police investigations, and caused significant reputational harm.
- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.

56. These statements were made with actual malice or reckless disregard for the truth.

57. The statements were defamatory per se in that they imputed criminal behavior, moral turpitude, and a threat to public safety, particularly through the synagogue ban and letter's portrayal of Plaintiff as a danger requiring exclusion.

58. Defendant CONGREGATION TORAH VE-EMUNAH, INC. is liable for Bensinger's letter disseminated on its letterhead and via its membership list.

59. Additionally, Defendant Blejer orally communicated similar false and defamatory statements regarding Plaintiff to members of his Kollel and the broader Orthodox Jewish community,

including allegations that Plaintiff had violated conditions of his release and posed a threat to others, building on the synagogue ban and Bensinger's letter to amplify the false narrative.

60. To the extent Defendant Blejer made or republished these allegations outside of privileged law enforcement communications, such statements were false, defamatory, and made with actual malice or reckless disregard for the truth as they relied on the same baseless claims propagated by Bensinger.

61. Defendant NORTH MIAMI BEACH KOLLEL, INC. is liable for Blejer's oral statements made through its platform and followers.

62. Plaintiff suffered reputational harm, emotional anguish, and loss of standing within his religious community, exacerbated by the synagogue ban's public exclusion and the widespread dissemination of Defendants' false statements, which forced Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to escape the ongoing defamation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Bensinger, Congregation Torah Ve-Emunah, Inc., North Miami Beach Kollel, Inc. and, to the extent applicable, Blejer, jointly and severally, for:

(a) Compensatory damages for reputational harm, emotional distress, and financial losses caused by Defendants' defamatory statements, including relocation costs, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and reckless conduct in making knowingly false statements;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

---

## COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)
### (Against All Defendants)

63. Plaintiff repeats and realleges the foregoing paragraphs.

64. Defendants' conduct was intentional, extreme, and outrageous including but not limited to:

- Defendant Bensinger's initiation of a phone call to Plaintiff in January or February 2022 to discuss rumors, followed by orchestrating a police visit that banned Plaintiff from all local synagogues based on a fabricated claim, later documented in a police report (Miami-Dade Police Report No. PD22032070358), that he and five other rabbis deemed Plaintiff's presence "alarming and concerning."
- Congregation Torah Ve-Emunah, Inc. facilitated or ratified this synagogue ban by providing organizational support, amplifying the effect of Bensinger's actions and enabling the perversion of community authority.
- Filing multiple knowingly false police reports, including Defendant Blejer's report on February 3, 2022 (Report No. PD220203037970), and Defendants Rosenberg and Bensinger's reports (No. PD22032070358) on February 19, 2022 and February 28, 2022 alleging violations of pretrial release conditions despite knowledge of their falsity.
- North Miami Beach Kollel, Inc. knowingly or negligently provided institutional support that facilitated Blejer's oral and written misrepresentations to law enforcement.
- Defendant Bensinger's dissemination of a defamatory letter via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to remove him from the community."
- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.
- Defendant Blejer's oral defamatory statements to community members, as rabbi of North Miami Beach Kollel, Inc. amplifying the false narrative.
- Defendant Katz's direct contact with Plaintiff's landlord, falsely claiming Plaintiff posed a danger to the community and urging eviction, which directly threatened Plaintiff's housing stability and exacerbated his emotional distress. Katz's actions were coordinated with, and reinforced by, the prior false reports and the synagogue ban.
- The knowing or negligent allowance by Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. of their platforms, resources, and community influence to be misused by Defendants, thereby facilitating and legitimizing the coordinated campaign of harassment, defamation, and legal manipulation against Plaintiff.


65. Defendants intentionally sought to inflict emotional and legal harm on Plaintiff through these repeated acts of false reporting, harassment, and character assassination, with the specific intent to ostracize him from his religious community, damage his reputation, destabilize his housing, and disrupt his criminal defense in the New Jersey proceedings, as evidenced by Bensinger's admitted goal to "remove [Plaintiff] from the community" and the coordinated involvement of Katz and the congregations.

66. Plaintiff suffered severe emotional distress as a result, including fear of loss of housing and threat of eviction exacerbated by Katz's actions and the synagogue ban; re-arrest or revocation of pretrial release, loss of housing, Social ostracization and reputational harm intensified by Bensinger's letter, Blejer's oral statements, and the institutional support of the congregations; and disruption of his criminal defense, all of which cumulatively forced Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to escape the ongoing campaign.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:

    (a) Compensatory damages for severe emotional distress, mental anguish, and related financial losses, including relocation costs, caused by Defendants' extreme and outrageous conduct, in an amount to be determined at trial;

    (b) Punitive damages to deter Defendants' malicious and egregious actions intended to cause Plaintiff severe emotional harm;

    (c) Costs of suit, including reasonable attorneys' and expert fees; and

    (d) Such other relief as the Court deems just and proper.

---

## COUNT FOUR: TORTIOUS INTERFERENCE WITH JUDICIAL PROCEEDINGS
### (Against Blejer, Bensinger, and Rosenberg, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc.)

67. Plaintiff repeats and realleges the foregoing paragraphs.

68. Defendants Blejer, Bensinger, and Rosenberg, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knew of Plaintiff's pending criminal matter in Ocean County, New Jersey, as evidenced by their references to Plaintiff's pretrial release conditions in their actions and communications.

69. Their false reports, orchestrated synagogue ban, and defamatory communications were designed to and did interfere with the pretrial proceedings, nearly resulting in a revocation of release or modification of monitoring conditions. Specifically:

    ● In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other

rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's access to community support critical for his defense preparation.

- Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knowingly allowed their facilities and platforms to be used to enforce this ban, thereby amplifying the interference with Plaintiff's judicial proceedings.
- On February 3, 2022, Defendant Blejer filed a false police report (Report No. PD220203037970) alleging Plaintiff violated pretrial conditions, which the Miami-Dade Police found baseless but which was transmitted to the Ocean County Prosecutor's Office.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial internet conditions. This report was intended to prejudice the Prosecutor against Plaintiff.
- Defendant Bensinger's defamatory letter, disseminated via WhatsApp to hundreds of community members, falsely claimed Plaintiff's "inappropriate activity" and "efforts to remove him from the community," further undermining Plaintiff's legal standing.
- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.
- Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knowingly permitted the letter to be published and shared through their community channels, magnifying the prejudice against Plaintiff.


70. Their actions caused Plaintiff actual harm in the form of legal costs to refute the false reports and obtain an affidavit from the landlord's father, strategic disadvantage due to the disrupted defense preparation and community isolation, and reputational damage in the eyes of prosecutors and the court, ultimately forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022 to mitigate the interference.


WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Blejer, Bensinger, and Rosenberg, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc., jointly and severally, for:

(a) Compensatory damages for legal costs, strategic disadvantage, reputational harm, and relocation expenses caused by Defendants' interference, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and intentional actions intended to sabotage Plaintiff's judicial proceedings;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

**COUNT FIVE: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against All Defendants)**

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Under New Jersey law, tortious interference with prospective economic advantage requires: (1) a reasonable expectation of economic advantage or benefit, (2) intentional and wrongful interference with that expectation, (3) a reasonable probability that the plaintiff would have received the anticipated benefit but for the interference, and (4) resulting damages. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989). Similarly, under Florida law, the tort requires: (1) the existence of a business relationship or advantageous position, (2) intentional and unjustified interference, (3) causation, and (4) damages. See Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

73. Plaintiff had a reasonable expectation of economic advantage, including but not limited to:
- The continued stability of his tenancy at his residence in North Miami Beach, Florida, which provided a secure base to prepare for and defend his New Jersey criminal case.
- The ability to maintain his reputation and community standing, which were essential to securing future employment or business opportunities following the resolution of his New Jersey case.
- The unimpeded ability to defend himself in the New Jersey criminal proceedings, including access to legal resources and freedom from undue prejudice caused by false accusations and community ostracization.

74. Defendants Bensinger, Blejer, Rosenberg, Katz, Congregation Torah Ve-Emunah, Inc., and North Miami Beach Kollel, Inc., individually and in concert, intentionally and wrongfully interfered with Plaintiff's prospective economic advantage through the following actions:
- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's community standing and housing stability critical to his legal defense.

18

- Congregation Torah Ve-Emunah, Inc. facilitated Bensinger's synagogue ban, ratifying and amplifying the interference.
- On February 3, 2022, Defendant Blejer filed a false police report (Report No. PD220203037970) alleging Plaintiff violated pretrial conditions, which threatened his tenancy and reputation despite being found baseless by the Miami-Dade Police.
- North Miami Beach Kollel, Inc. enabled or endorsed Blejer's oral and written communications that contributed to this false narrative.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial internet conditions. These reports were intended to trigger Plaintiff's arrest or revocation of pretrial release, which would have disrupted his ability to prepare his legal defense and maintain his tenancy.
- Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to remove him from the community," prejudicing Plaintiff's reputation and tenancy.
- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.
- Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knowingly permitted the letter to be published and shared through their community channels, magnifying the prejudice against Plaintiff.
- Defendant Blejer made oral defamatory statements to community members on or about February or March 2022, at North Miami Beach Kollel in his capacity as Rabbi, falsely accusing Plaintiff of violating legal conditions, further inciting efforts to ostracize Plaintiff and threaten his housing and economic prospects.
- Defendant Katz, leveraging his positions with Tomchei Shabbos, Chesed Shel Emes, and as clergy support for the medical examiner, contacted Plaintiff's landlord and other community actors, falsely claiming Plaintiff was a danger to the community and urging the landlord to terminate Plaintiff's tenancy. Katz's conduct materially contributed to the disruption of Plaintiff's housing, community standing, and ability to defend his New Jersey criminal case. This action directly threatened Plaintiff's housing stability, which was critical to his ability to focus on his New Jersey legal defense.

75. Defendants' actions were wrongful and unjustified, as they were based on knowingly false statements and reports, made with malice or reckless disregard for their truth. Defendant Bensinger's letter explicitly admitted an intent to "remove [Plaintiff] from the community," and Katz, together with the congregations, actively participated in and ratified this campaign. But for Defendants' interference, Plaintiff had a reasonable probability of maintaining his tenancy,

preserving his community standing, and effectively defending his New Jersey criminal case without the added burden of false accusations, the synagogue ban, and legal challenges.

76. But for Defendants' interference, Plaintiff had a reasonable probability of maintaining his tenancy, preserving his community standing, and effectively defending his New Jersey criminal case without the added burden of false accusations, the synagogue ban, and legal challenges. The false police reports, synagogue ban, and defamatory statements created a substantial risk of pretrial release revocation, increased legal expenses, and prejudiced the Ocean County Prosecutor's Office against Plaintiff.

77. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered damages, including but not limited to:
- Financial losses from increased legal expenses to contest the false police reports, address the synagogue ban, and protect his tenancy, including costs to obtain police records and consult legal counsel.
- Emotional distress from the threat of eviction, social ostracization due to the synagogue ban, and fear of adverse legal consequences in his New Jersey case.
- Harm to Plaintiff's reputation, reducing his prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense, as the false reports, synagogue ban, and community campaign diverted resources and caused undue stress, forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022.

78. Defendants acted with malice, as evidenced by their knowledge of the falsity of their statements and reports, their coordinated efforts to harm Plaintiff through the synagogue ban and defamatory campaign, and Bensinger's explicit intent to remove Plaintiff from the community. This malicious conduct warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:
- (a) Compensatory damages for financial losses, emotional distress, reputational harm, and relocation expenses caused by Defendants' interference, in an amount to be determined at trial;
- (b) Punitive damages to deter Defendants' malicious and intentional interference with Plaintiff's prospective economic advantage;
- (c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

---

## COUNT SIX: CIVIL CONSPIRACY
### (Against All Defendants)

79. Plaintiff repeats and realleges the foregoing paragraphs.

80. Under New Jersey law, civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177, 876 A.2d 253 (2005). Similarly, under Florida law, civil conspiracy requires: (1) an agreement between two or more parties, (2) to commit an unlawful act or a lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damages. Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). An agreement may be inferred from circumstantial evidence, such as the pattern, timing, and shared knowledge of the defendants' actions. See Banco Popular, 184 N.J. at 178; Charles, 988 So. 2d at 1160.

81. Defendants Bensinger, Blejer, Rosenberg, and Katz knowingly and intentionally conspired to harm Plaintiff by orchestrating a coordinated campaign to ostracize him from the community, damage his reputation, and disrupt his ability to defend himself in his New Jersey criminal case.

82. Katz, in particular, leveraged his volunteer roles with Tomchei Shabbos, Chesed Shel Emes, and as clergy support for the medical examiner to assist Defendants' efforts by contacting law enforcement and others with influence over Plaintiff's housing, community access, and legal position.

83. The existence of their agreement is inferred from the following circumstantial evidence:

- In January or February 2022, Defendant Bensinger initiated contact by calling Plaintiff on the phone to discuss rumors about him, shortly after which Plaintiff hung up. Later that same day, a police officer visited Plaintiff's residence and informed him he was not welcome in any local synagogue and would be arrested if he entered any synagogue in

town - an action directly linked to Bensinger's statement in a subsequent police report that he and five other rabbis decided Plaintiff's presence in the community was "alarming and concerning," a fabricated concern used to justify the ban.

- Congregation Torah Ve-Emunah, Inc. facilitated Bensinger's synagogue ban, ratifying and amplifying the civil conspiracy.
- On February 3, 2022, Defendant Blejer caused a police report to be filed with the Miami-Dade Police Department (Report No. PD220203037970) falsely alleging Plaintiff had violated the terms of his pretrial monitoring release conditions by engaging in unsupervised contact with a minor at a community event. The Miami-Dade Police Department found the report to be baseless.
- On or about February 19, 2022, Defendants Rosenberg and Bensinger filed a police report (No. PD220302070358) with Detective Shad Mezghat, in which he stated that Plaintiff's brother was making harassing spoof calls "in retaliation for a previous Miami-Dade Police Report (PD220203037970) concerning his brother." Rosenberg and Bensinger's specific reference to Blejer's February 2, 2022, report, which they did not file, demonstrates that Defendants communicated and coordinated their actions, sharing knowledge of the false reporting campaign to harass Plaintiff and his family.
- On or about February 28, 2022, Defendants Bensinger and Rosenberg filed another false police report (under the same Report No. PD220302070358). In that report, Defendants made knowingly false statements to the officers that Plaintiff had violated the terms of his pretrial monitoring release conditions by obtaining the landlord's Wi-Fi code and, being dissatisfied with the filtered access, had installed his own internet connection in violation of pretrial monitoring conditions. This report, following Blejer's and Bensinger's earlier reports, further evidences a pattern of coordinated false filings.
- The February 19, 2022 and February 28, 2022 report identified Rosenberg as a law enforcement officer despite his actual role as a Miami-Dade Police Department chaplain. Rosenberg misrepresented his authority in this report to further amplify the false narrative of Plaintiff as a danger to the community simply because he lived near John F. Kennedy Middle School. This misrepresentation of Rosenberg's authority suggests his complicity in supporting Defendants' coordinated effort to portray Plaintiff as a danger.
- Shortly after these false reports, Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff engaged in "inappropriate activity" and explicitly advocating for his removal from the community. The letter's timing, following the false reports, suggests it was part of a planned escalation to amplify harm.
- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.
- Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knowingly permitted the letter to be published and shared through their community channels, magnifying the prejudice against Plaintiff.

- Defendant Blejer made oral defamatory statements to community members on or about February or March 2022 as Rabbi of North Miami Beach Kollel Inc. falsely accusing Plaintiff of violating legal conditions, building upon Bensinger's letter and reports, further inciting community action against Plaintiff.
- Defendant Katz, using his role in volunteer organizations that often require police and community coordination, contacted Plaintiff's landlord on or about March 2022, falsely claiming Plaintiff was a danger and urging termination of his tenancy. Katz's involvement, in close temporal proximity to Bensinger's, Blejer's, and Rosenberg's other actions, indicates his active participation in Defendants' coordinated effort to destabilize Plaintiff's housing and legal position.

84. The rapid succession, complementary nature, and shared knowledge of these acts - Bensinger's initial phone call and police-enforced synagogue ban based on his fabricated community concern, false police reports referencing each other, Rosenberg's authoritative misrepresentation, defamatory letter, defamatory statements, and Katz's landlord interference - demonstrate a coordinated campaign consistent with an implicit agreement among Defendants to harm Plaintiff.

85. The purpose of Defendants' conspiracy was to commit unlawful acts, including but not limited to:
- Abuse of Process: Filing false police reports, such as Blejer's February 3, 2022, report, and Rosenberg and Bensinger's February 19, 2022 and February 28, 2022 reports, and orchestrating the police-enforced synagogue ban based on fabricated community concern, to harass Plaintiff and trigger his arrest or revocation of pretrial release, and social consequences (Count One).
- Defamation: Spreading false statements through Bensinger's letter and Blejer's oral statements, and Katz's communications to Plaintiff's landlord (Count Two).
- Tortious Interference with Prospective Economic Advantage: Disrupting Plaintiff's tenancy, community standing, religious participation, and legal defense through false reports, defamatory statements, landlord harassment, and the synagogue ban (Count Five).
- Invasion of Privacy (False Light): Publicly portraying Plaintiff as a danger or lawbreaker through the letter, statements, Rosenberg's amplified allegations, the synagogue ban based on Bensinger's false claim, and Katz's landlord communications, causing humiliation and relocation, causing humiliation and forcing his relocation (Count Eight).

86. Defendants committed overt acts in furtherance of the conspiracy, including:

- Defendant Bensinger's phone call to Plaintiff in January or February 2022 and the subsequent police visit banning Plaintiff from local synagogues based on his fabricated claim of community concern.
- Defendant Blejer's filing of a false police report on February 3, 2022.
- Defendants Rosenberg and Bensinger's filing of the false police reports on February 19, 2022 and February 28, 2022
- Defendant Bensinger's dissemination of the defamatory letter.
- Defendant Blejer's oral defamatory statements to community members, reinforcing the false narrative initiated by Bensinger.
- Defendant Katz's contact with Plaintiff's landlord, urging termination of Plaintiff's tenancy, which amplified the conspiracy's harm.

87. Upon information and belief, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. each acted in concert with their respective Rabbis and the other named Defendants, ratifying or endorsing their conduct, and thereby participated in a coordinated scheme to harass Plaintiff, damage his reputation, interfere with his judicial proceedings, and drive him out of the community.

88. Defendants coordinated and encouraged each other in their campaign of false reports, community defamation, and legal harassment. Katz's specialized volunteer role enabled him to advance these efforts by contacting landlords and other community actors, further evidencing the coordinated nature of the conspiracy.

89. Defendants' actions were undertaken with malice, as they knew their statements and reports were false or acted with reckless disregard for their truth. The baseless nature of the February 3, 2022, and February 19, 2022 and February 28, 2022 police reports, Bensinger's reference to Blejer's report in the February 19, 2022, report, Rosenberg's unverified internet claims despite his non-law enforcement role, the ungrounded synagogue ban following Bensinger's fabricated community concern, combined with Bensinger's letter's explicit intent to "remove [Plaintiff] from the community" and Katz's landlord communications confirm their malicious intent to harm Plaintiff.

90. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff suffered damages, including but not limited to:
- Financial losses from increased legal expenses to contest the false police reports and protect his tenancy, including costs to obtain police records and consult legal counsel.

- Severe emotional distress from the coordinated campaign of harassment, public shaming, loss of religious community access due to the synagogue ban, and fear of wrongful legal consequences, which forced Plaintiff to leave North Miami Beach, Florida, on or about March 2022, incurring relocation costs such as moving expenses and new housing costs.
- Reputational damage, reducing Plaintiff's prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense in the New Jersey criminal case, as the false reports and synagogue ban were intended to prejudice the Ocean County Prosecutor's Office and isolate Plaintiff from support.

91. The malicious and coordinated nature of Defendants' actions warrants punitive damages to deter such egregious conduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:
   (a) Compensatory damages for financial losses, relocation costs, emotional distress, and reputational harm caused by Defendants' civil conspiracy, in an amount to be determined at trial;
   (b) Punitive damages to deter Defendants' malicious and unlawful coordinated actions;
   (c) Costs of suit, including reasonable attorneys' and expert fees; and
   (d) Such other relief as the Court deems just and proper.

---

### COUNT SEVEN: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

92. Plaintiff repeats and realleges the foregoing paragraphs.

93. Under New Jersey law, tortious interference with prospective economic advantage requires: (1) a reasonable expectation of economic advantage or benefit, (2) intentional and wrongful interference with that expectation, (3) a reasonable probability that the plaintiff would have received the anticipated benefit but for the interference, and (4) resulting damages. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989). Similarly, under Florida law, the tort requires: (1) the existence of a business relationship or advantageous

position, (2) intentional and unjustified interference, (3) causation, and (4) damages. Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

94. At all relevant times, Plaintiff maintained an ongoing residential lease and tenancy in North Miami Beach, Florida and had a reasonable expectation of continued occupancy.

95. Plaintiff had a reasonable expectation of economic advantage, including but not limited to:
- The continued stability of his tenancy at his residence in North Miami Beach, Florida, which provided a secure base to prepare for and defend his New Jersey criminal case and maintain his financial stability.
- The preservation of his reputation and community standing, which were essential to securing future employment or business opportunities following the resolution of his New Jersey case.
- The unimpeded ability to defend himself in the New Jersey criminal proceedings, including access to legal resources and freedom from undue prejudice caused by false accusations and community ostracization.

96. Defendants Rosenberg, Bensinger, Blejer, and Katz, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. individually and in concert, intentionally and wrongfully interfered with Plaintiff's prospective economic advantage through the following actions:

- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," disrupting Plaintiff's community standing and housing stability critical to his legal defense and economic prospects.
- On February 2, 2022, Defendant Blejer filed a false police report (Report No. PD220203037970) alleging Plaintiff violated pretrial conditions, which threatened his tenancy and reputation despite being found baseless by the Miami-Dade Police.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial internet conditions. These false police reports were intended to jeopardize Plaintiff's release, tenancy, and economic stability, trigger Plaintiff's arrest or revocation of pretrial release, and disrupt his ability to prepare his legal defense.
- Defendant Bensinger authored and disseminated a defamatory letter on or about March 2022 via WhatsApp to hundreds of community members, falsely claiming Plaintiff

engaged in "inappropriate activity" and advocating "efforts to remove him from the community." The letter's timing, following the false police reports, was designed to amplify reputational harm and jeopardize Plaintiff's tenancy and future economic prospects.

- Congregation Torah Ve-Emunah, Inc. knowingly allowed this letter to be published and disseminated it through its community channels, amplifying the harm to Plaintiff.
- Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. knowingly permitted the letter to be published and shared through their community channels, magnifying the prejudice against Plaintiff.
- Defendant Blejer made oral defamatory statements to community members on or about February or March 2022, at North Miami Beach Kollel in his capacity as Rabbi, falsely accusing Plaintiff of violating legal conditions, which reinforced Bensinger's letter and further damaged Plaintiff's reputation and community standing.
- Defendant Katz, leveraging his volunteer roles with Tomchei Shabbos, Chesed Shel Emes, and as clergy support for the medical examiner — roles which require coordination with landlords, law enforcement, and other community actors — contacted Plaintiff's landlord in or about March 2022, falsely claiming Plaintiff was a danger and urging eviction. Katz's conduct, in coordination with Bensinger, Rosenberg, and Blejer, was part of a concerted effort to destabilize Plaintiff's housing and economic position. This action directly threatened Plaintiff's housing stability, which was critical to his financial and legal position.
- Upon information and belief, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. acted in concert with their respective Rabbis and the other named Defendants, ratifying or endorsing their conduct, and thereby participated in the coordinated effort to interfere with Plaintiff's tenancy, community standing, and economic prospects."

97. Defendants knew of Plaintiff's housing status and, as part of a coordinated effort to drive him out of the community, including through the synagogue ban, intentionally attempted to interfere with that tenancy and his broader economic prospects. Katz's specialized position allowed him to directly leverage landlord contacts to advance the interference, further evidencing coordination among the Defendants.

98. Defendants had no legitimate reason to interfere with Plaintiff's housing and acted solely out of malice, with the goal of forcing Plaintiff to relocate and further isolating him from familial and legal support. This is evidenced by Bensinger's synagogue ban, his letter advocating removal of Plaintiff, and Katz's landlord communications.

99. Although the landlord declined to act on the eviction request, the communication, combined with the synagogue ban and defamatory campaign, caused Plaintiff to fear for his housing stability and endure further emotional and psychological distress, ultimately leading to his relocation.

100. Defendants' interference was wrongful and unjustified, as their actions were based on knowingly false statements and reports, constituting torts such as abuse of process and defamation. The false police reports, synagogue ban, defamatory statements and Katz's landlord communications were made with malice, as Defendants knew they were false or acted with reckless disregard for their truth, as evidenced by the baseless nature of the reports, the fabricated community concern, and Bensinger's explicit intent to "remove [Plaintiff] from the community."

101. But for Defendants' interference, Plaintiff had a reasonable probability of maintaining his tenancy, preserving his reputation for future employment or business opportunities, and effectively defending his New Jersey criminal case without the burden of false accusations, the synagogue ban, and legal challenges. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered damages, including but not limited to:
- Financial losses from increased legal expenses to contest the false police reports, address the synagogue ban, and protect his tenancy, including costs to obtain police records and consult legal counsel.
- Emotional distress from the threat of eviction, social ostracization due to the synagogue ban, and fear of adverse legal consequences in his New Jersey case.
- Reputational damage, reducing Plaintiff's prospects for future employment or business opportunities within the Jewish Orthodox community.
- Disruption of Plaintiff's ability to prepare his legal defense, as the false reports, synagogue ban, and community campaign diverted resources and caused undue prejudice with the Ocean County Prosecutor's Office, forcing Plaintiff to relocate from North Miami Beach, Florida, in or about March 2022.

102. Defendants' malicious conduct, undertaken with knowledge of the falsity of their actions, warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:

(a) Compensatory damages for financial losses, emotional distress, reputational harm, and relocation expenses caused by Defendants' tortious interference with Plaintiff's prospective economic advantage, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and intentional interference;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

### COUNT EIGHT: INVASION OF PRIVACY (FALSE LIGHT)
### (Against All Defendants)

103. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

104. Under New Jersey law, invasion of privacy by false light requires: (1) placing the plaintiff in a false light before the public, (2) that is highly offensive to a reasonable person, and (3) with knowledge or reckless disregard of the falsity (actual malice). Romaine v. Kallinger, 109 N.J. 282, 294, 537 A.2d 284 (1988). Similarly, under Florida law, the tort requires: (1) publicity that places the plaintiff in a false light, (2) that is highly offensive to a reasonable person, and (3) with actual malice. Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1100 (Fla. 2008).

105. Defendants Bensinger, Rosenberg, Blejer, Katz, Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc. placed Plaintiff in a false light before the public by disseminating false and misleading statements that portrayed Plaintiff as a dangerous individual or violator of legal conditions, which was highly offensive to a reasonable person:

- In January or February 2022, Defendant Bensinger orchestrated a police visit banning Plaintiff from all local synagogues in North Miami Beach, Florida, based on a fabricated claim later documented in a police report (Miami-Dade Police Report No. PD22032070358) that he and five other rabbis deemed Plaintiff's presence "alarming and concerning," publicly portraying Plaintiff as a threat requiring exclusion.
- On February 3, 2022 (Report No. PD220203037970), Defendant Blejer filed a false police report alleging baseless misconduct at a community event.
- On February 19, 2022 and February 28, 2022, Defendants Bensinger and Rosenberg filed a false police report (Report No. PD22032070358) alleging Plaintiff violated pretrial release conditions by accessing the internet, despite knowing their statements to the police officer were false.
- On or about March 2022, Defendant Bensinger authored and disseminated a defamatory letter via WhatsApp to hundreds of community members in North Miami Beach, Florida, falsely claiming Plaintiff engaged in "inappropriate activity" and advocating "efforts to

remove him from the community," portraying Plaintiff as a threat despite Defendants' knowledge of the falsity.
- On or about February 2022 or March 2022, Defendant Blejer made oral statements to community members, falsely accusing Plaintiff of violating his pretrial release conditions or engaging in misconduct. These statements, made to multiple individuals in public settings, reinforced the false narrative created by Bensinger's letter.
- Defendant Katz, leveraging his roles with Tomchei Shabbos, Chesed Shel Emes, and as clergy support for the medical examiner, contacted Plaintiff's landlord and others in the community, falsely claiming Plaintiff was a danger and urging actions to destabilize his housing and community standing. Katz's conduct amplified the false light created by the other Defendants and materially contributed to the public portrayal of Plaintiff as a threat.
- Defendant CONGREGATION TORAH VE-EMUNAH, INC. facilitated Bensinger's synagogue ban and letter dissemination, and Defendant NORTH MIAMI BEACH KOLLEL, INC. enabled Blejer's oral statements, amplifying the false light.

106. The false light created by Defendants' statements was highly offensive to a reasonable person, as it suggested Plaintiff was a criminal or danger to the community, leading to public shaming, ostracization through the synagogue ban, and widespread community condemnation. Such a portrayal would cause significant personal embarrassment and distress to any reasonable individual in Plaintiff's position.

107. Defendants acted with actual malice, knowing their statements were false or with reckless disregard for their truth. Bensinger's orchestration of the synagogue ban and letter, Blejer's statements, Rosenberg's contribution to the February 28, 2022 report, and Katz's communications to landlords and community actors were undertaken with full knowledge of the falsity or with reckless disregard for the truth. These acts were part of a coordinated effort to malign Plaintiff.

108. The publicity of Defendants' statements was substantial, as Bensinger's letter and the synagogue ban reached hundreds of community members via WhatsApp and police enforcement in North Miami Beach, Florida, and Blejer's oral statements were made to multiple individuals in public settings, ensuring widespread dissemination within Plaintiff's community. Katz's landlord communications further amplified the public perception that Plaintiff was a danger or lawbreaker.

109. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress and personal humiliation, including but not limited to:

- Public shaming and ostracization by community members, who were misled by Defendants' false statements and the synagogue ban to view Plaintiff as a danger or lawbreaker.
- Emotional distress so severe that Plaintiff was forced to leave North Miami Beach, Florida, in or about March 2022 to avoid further public humiliation and harassment, incurring significant relocation costs, including moving expenses and costs to secure new housing.
- Disruption of Plaintiff's personal and social life, as he was compelled to abandon his community ties to escape the false light created by Defendants.

110. Defendants' malicious conduct, undertaken with knowledge of the falsity of their statements, warrants punitive damages to deter such egregious behavior.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all Defendants jointly and severally, for:

(a) Compensatory damages for emotional distress, relocation costs, and personal humiliation caused by Defendants' invasion of privacy, in an amount to be determined at trial;

(b) Punitive damages to deter Defendants' malicious and reckless actions;

(c) Costs of suit, including reasonable attorneys' and expert fees; and

(d) Such other relief as the Court deems just and proper.

**COUNT NINE: INSTITUTIONAL LIABILITY (RESPONDEAT SUPERIOR / RATIFICATION)**
**INVASION OF PRIVACY (FALSE LIGHT)**
**(Against Defendants Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc.**

111. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

112. At all times relevant, Defendants Aryeh Leib Bensinger and Yaakov Blejer acted as Rabbis and agents of Defendants Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc., respectively.

113. Bensinger's defamatory letter was issued on the official letterhead of Congregation Torah Ve-Emunah, Inc., signed in his capacity as Rabbi, and disseminated using congregational resources, including bulletin boards and membership lists.

114. Blejer spread false rumors concerning Plaintiff within the North Miami Beach Kollel community and enlisted members of the Kollel to participate in the scheme to file false police reports, thereby acting under color of his authority as Rabbi of the Kollel.

115. Upon information and belief, both congregations ratified or acquiesced in these actions, allowed their institutional authority to be used in furtherance of the campaign against Plaintiff, and derived reputational benefits within the community by appearing to safeguard communal standards.

116. Under the doctrines of respondeat superior and ratification, both congregations are jointly and severally liable for the wrongful acts of their agents committed within the scope of their apparent authority.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants Congregation Torah Ve-Emunah, Inc. and North Miami Beach Kollel, Inc., jointly and severally, for:

    (a) Compensatory damages,
    (b) Punitive damages,
    (c) Costs of suit,
    (d) Attorneys' fees,
    (e) and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

As to Defendant Rabbi Yaakov Blejer:

Compensatory damages, punitive damages, costs of suit, and attorneys' fees for Abuse of Process, Defamation, Intentional Infliction of Emotional Distress, Tortious Interference with Judicial Proceedings, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and all related claims; and such other relief as the Court deems just and proper.

As to Defendant Rabbi Aryeh Leib Bensinger:

Compensatory damages, punitive damages, costs of suit, and attorneys' fees for Abuse of Process, Defamation, Intentional Infliction of Emotional Distress, Tortious Interference with Judicial Proceedings, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and all related claims; and such other relief as the Court deems just and proper.


As to Defendant Rabbi Mark Rosenberg:

Compensatory damages, punitive damages, costs of suit, and attorneys' fees for Abuse of Process, Intentional Infliction of Emotional Distress, Tortious Interference with Judicial Proceedings, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and all related claims; and such other relief as the Court deems just and proper.


As to Defendant David Katz a/k/a Dov Katz a/k/a Dovie Katz:

Compensatory damages, punitive damages, costs of suit, and attorneys' fees for Abuse of Process, Intentional Infliction of Emotional Distress, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and all related claims; and such other relief as the Court deems just and proper.


As to Defendant Congregation Torah Ve-Emunah, Inc.:

Compensatory damages, punitive damages to deter Congregation Torah Ve-Emunah, Inc. from using their institutional authority and resources to engage in or ratify defamatory campaigns against individuals under the guise of communal protection, costs of suit, and attorneys' fees for Defamation, Abuse of Process, Intentional Infliction of Emotional Distress, Tortious Interference with Judicial Proceedings, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and Institutional Liability (Count Nine); and such other relief as the Court deems just and proper.


As to Defendant North Miami Beach Kollel, Inc.:

Compensatory damages, punitive damages to deter North Miami Beach Kollel, Inc. from using their institutional authority and resources to engage in or ratify defamatory campaigns against individuals under the guise of communal protection, costs of suit, and attorneys' fees for Defamation, Abuse of Process, Intentional Infliction of Emotional Distress, Tortious Interference with Judicial Proceedings, Civil Conspiracy, Tortious Interference with Prospective Economic Advantage, Invasion of privacy by false light, and Institutional Liability (Count Nine); and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
Dated: September 28, 2025
By:
Moshe Zeines
410 Union Avenue #302
Irvington, NJ 07111
Pro Se Plaintiff